UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

BILL E. MORRISON )
)
v. ) NO. 2:05-CV-150
)
JO ANNE B. BARNHARDT, )
Commissioner of Social Security )

**MEMORANDUM OPINION**

The plaintiff Bill E. Morrison has filed a motion for a judgment on the pleadings on his complaint to obtain judicial review of the final decision of the defendant Commissioner of Social Security Jo Anne B. Barnhardt denying his application for supplemental security income under the Social Security Act. The defendant has filed a motion for summary judgment.

Mr. Morrison was born in 1961 and was 43 years old at the time of his administrative hearing. [Tr. 362]. He completed tenth grade and does not have any relevant past work experience. [Tr. 14, 364]. Mr. Morrison alleges he is disabled as of February 12, 2003, from two heart attacks, hepatitis C, and shortness of breath. [Tr. 14, 60]. Based upon a finding that his severe impairments were not severe enough, the Administrative Law Judge [ALJ] found that Mr. Morrison was not disabled as defined by the Social Security Act. [Tr. 16].

At Mr. Morrison's administrative hearing held on November 3, 2004, the testimony of Mr. Morrison, medical experts Drs. Edward Griffin and Margaret Robbins, and vocational expert Donna Bardsley was received into evidence. [Tr. 362-85]. Mr. Morrison testified he had heart problems, kidney stones, hepatitis C, back and neck pain, and experienced shortness of breath. [Tr. 365, 367-68]. He is able, however, to walk about a mile a day. [Tr. 366]. Mr. Morrison testified he stays with friends rent-free in return for helping with yard work and the occasional babysitting. [Tr. 370-71]. He claimed not to have smoked cigarettes "in years." [Tr. 371].

Dr. Griffin testified next that the only impairment documented by the medical evidence was a "poorly defined cardiac impairment." [Tr. 374]. The doctor also testified that emergency room records from August 2004 indicated Mr. Morrison still smoked cigarettes, contrary to his testimony at the administrative hearing. [Tr. 375]. Dr. Griffin indicated Mr. Morrison could probably lift 40 to 45 pounds occasionally and 25 pounds frequently. [*Id.*]. In addition, his work environment should not be excessively hot or cold.

Dr. Robbins, a psychiatrist, testified next that Mr. Morrison's medical record did not indicate "any consistent reporting of symptoms that would equal or meet a listing" or "any consistent mental health treatment." [Tr. 377]. She believed that he might have some limitations in terms of his intellect. [*Id.*]. For example, he might

2

need help managing his finances. [Tr. 378]. Mr. Morrison's intelligence quotient [IQ] was indicated as being around 76. [Tr. 380].

Vocational expert Donna Bardsley testified next that Mr. Morrison did not have any past relevant work experience. [Tr. 382]. The ALJ then asked her to assume a man of Mr. Morrison's age, education, IQ, and non-existent work background who would likely have a mild difficulty responding appropriately to criticism from supervisors due to a characterological deficit. [Tr. 262, 383]. In addition, such a person could not work in extreme heat or extreme cold but could occasionally lift 40 to 45 pounds and frequently lift 25 pounds. [Tr. 383]. According to the vocational expert, such a person could work as a hand packager, sorter, assembler, and inspector, *inter alia*.

The ALJ ruled that Mr. Morrison was not disabled because his severe cardiovascular and intellectual impairments were not severe enough for a finding of disability. [Tr. 16]. The ALJ then found Mr. Morrison retained the residual functional capacity [RFC] to perform simple, unskilled light work that does not expose him to excessive hot, humid, and cold temperatures. [Tr. 17]. With those limitations, Mr. Morrison could perform work as a hand packager, sorter, assembler, and inspector. [Tr. 18].

This court must affirm an ALJ's conclusions unless the ALJ applied incorrect

legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405g. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Accordingly, this court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

Mr. Morrison requests a judgment on the pleadings and challenges the ALJ's failure to order consultative IQ testing to determine his mental status. In April 2004, Mr. Morrison's attorney requested that the ALJ order a consultative examination that included intelligence testing. [Tr. 361]. During Mr. Morrison's administrative hearing in November 2004, the ALJ denied this request. [*Id.*]. Mr. Morrison's attorney wants the results of the IQ testing to apparently buttress his claims under 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 for mental retardation. However, the record is void of any mention by any health professional that Mr. Morrison might be mentally retarded. In addition, none of the previous testing of Mr. Morrison has indicated an IQ any lower than the borderline intellect (i.e., not mentally

4

retarded) range. [Tr. 182-83, 257-62]. The results of a May 1997 IQ test put Mr. Morrison squarely in the borderline intellect range. [Tr. 182-83]. A mental status examination performed in October 2003 again placed him in the borderline intellectual range. [Tr. 262]. And, Dr. Robbins testified at the administrative hearing that an IQ of 76 for Mr. Morrison seemed "reasonably consistent with the rest of the [medical] record." [Tr. 380].

Because there is no evidence in the record to support a finding of mental retardation, the ALJ was under no obligation to order additional IQ testing. Under 20 C.F.R. § 416.919a(b), a consultative examination can be ordered if, *inter alia*, the additional evidence needed is not contained in the medical record or the evidence contained in the medical record is insufficient. Mr. Morrison has not provided sufficient evidence to this court that either situation has occurred in this case. As such, the ALJ's decision not to grant Mr. Morrison's motion to order consultative IQ testing to determine his mental status was made with substantial evidence.

Mr. Morrison also contends the ALJ failed to properly consider his documented inability to deal with supervisors as a social function limitation instead of a character trait. In the report from her consultative examination, Elizabeth Jones, M.A., stated that Mr. Morrison "would likely have difficulty responding appropriately to criticism from supervisors due to *characterological* deficit." [Tr. 262]. [Emphasis

5

added].  The ALJ asked Dr. Robbins at the administrative hearing whether such a difficulty would properly be characterized as an impairment or a character trait.  [Tr. 379].  She indicated it was listed as a *character trait*.  [*Id*.]. [Emphasis added].  The vocational expert later asked the ALJ if such a character trait was mild, moderate, severe, or marked.  [Tr. 383].  The ALJ replied that since there was no indication in the original report that it must be mild.  [*Id*.].  This court finds nothing improper in the ALJ's reliance upon Ms. Jones' statement that the difficulty was a character trait in addition to Dr. Robbins' concurrence with that statement.  As such, the ALJ did not fail to properly consider the character trait.

After careful consideration of the entire record of proceedings related to this case, Mr. Morrison's motion for a judgment on the pleadings will be denied, the defendant's motion for summary judgment will be granted, and this action will be dismissed.

An appropriate order will follow.

ENTER:

    s/Thomas Gray Hull  
THOMAS GRAY HULL  
  SENIOR U. S. DISTRICT JUDGE